UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

BARRINGTON III OF FOREST GLEN CONDOMINIUM ASSOCIATION, INC.,

Plaintiff,

v. Case No.: 2:26-cv-1954-SPC-NPM

VANTAGE RISK SPECIALTY INSURANCE COMPANY,

Defendant.

# OPINION AND ORDER

Before the Court is Defendant Vantage Risk Specialty Insurance Company's Motion to Dismiss Plaintiff's First Amended Complaint. (Doc. 26). Plaintiff Barrington III of Forest Glen Condominium Association, Inc. responded in opposition. (Doc. 31). For the following reasons, the Court grants the motion.

## Background[1]

Defendant issued a commercial property insurance policy to Plaintiff, effective May 14, 2022, through May 14, 2023, insuring seven buildings. (¶¶

[1] The Court accepts the well-pleaded facts in the First Amended Complaint (Doc. 23) as true and construes them in the light most favorable to Plaintiff. *United States v. Jallali*, 478 F. App'x 578, 579 (11th Cir. 2012). The Court cites the allegations in the First Amended Complaint as (¶ [number]).

8–10). The policy's Loss Payment provision states in relevant part:

> 4. Loss Payment
> g. We will pay for covered loss or damage to Covered Property within 30 days after we receive the sworn proof of loss, if you have complied with all of the terms of this Coverage Part and:
> (1) We have reached agreement with you on the amount of loss; or
> (2) An appraisal award has been made.

(Doc. 23-1 at 29).

On September 28, 2022, Hurricane Ian damaged the roofs and exteriors of all seven buildings. (¶ 15). Plaintiff timely reported the loss. (¶ 17). In March 2023, Defendant denied coverage at six buildings on the collective grounds that: (a) the observed damage was attributable to wear, tear, deterioration, lack of maintenance, and preexisting conditions, rather than Hurricane Ian; (b) there were no storm-created openings sufficient to trigger coverage for interior water damage; and (c) the losses were otherwise excluded under the policy's wear and tear, faulty workmanship, and existing damage exclusion endorsement. (¶ 20). Regarding the seventh building, Defendant found a replacement cost value ("RCV") of $1,936.96, but because the deductible was $25,737.84, it did not issue a payment. (¶ 19).

Plaintiff retained a public adjuster ("SCS") and in February 2024, submitted a sworn proof of loss, claiming a net insured loss of $3,061,445.62 across all seven buildings, based upon SCS's estimate reflecting a RCV of

$3,294,697.24. (¶¶ 23–24). Defendant rejected the proof of loss. (¶ 25).

On December 30, 2024, Plaintiff filed a civil remedy notice ("CRN") with the Florida Department of Financial Services. (¶ 27; Doc. 23-2). The CRN identified violations of sections 624.155(1)(b)(1), 624.155(1)(b)(3), and 626.9541(1)(i)(3)(a), (b), (c), (d), (f), (g), (h), and (j), Florida Statutes, among other issues. Defendant did not cure any violations or pay Plaintiff within the cure period. (¶¶ 29–30).

In April 2025, Plaintiff invoked the policy's appraisal process. (¶ 31). In December 2025, the appraisal panel issued an award, finding damage at all seven buildings. (¶ 33). The award's RCV was $2,270,356.50, and the actual cash value ("ACV") was $1,989,837.65. In January 2026, Defendant paid the net ACV of $1,809,672.77 (ACV $1,989,837.65 less an applied deductible of $180,164.88). (¶ 35). The payment included no interest. (¶ 39). Defendant withheld recoverable depreciation of $280,518.85 (the difference between the award's RCV and ACV), which Defendant's payment letter conditioned upon submission of repair documentation within 180 days. (¶ 40). Plaintiff alleges that Defendant received documentation of the repairs and, therefore, owes payment.

In the First Amended Complaint, Plaintiff brings four claims: breach of contract (count I); declaratory judgment under § 86.011, Fla. Stat. (count II); statutory bad faith under § 624.155(1)(a)(1), Fla. Stat. for violations of §

626.9541(1)(i) (count III); and statutory bad faith under § 624.155(1)(b), Fla. Stat. (count IV). (Doc. 23). Defendant moves to dismiss all claims under Federal Rule of Civil Procedure 12(b)(6). (Doc. 26).

**Legal Standard**

To survive a Federal Rule of Civil Procedure 12(b)(6) motion, a complaint must allege "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Bare "labels and conclusions, and a formulaic recitation of the elements of a cause of action," do not suffice. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A district court should dismiss a claim when a party does not plead facts that make the claim facially plausible. *See id.* at 570. A claim is facially plausible when a court can draw a reasonable inference, based on the facts pled, that the opposing party is liable for the alleged misconduct. *See Iqbal*, 556 U.S. at 678. This plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 557 (internal quotation marks omitted)).

**Analysis**

*Counts I and II*

To begin, the Court addresses the two claims that concern breach of contract. Defendant argues that the Court should dismiss the breach of contract claim (count I) for numerous reasons, including that it has paid the

full amount of the appraisal award, so the coverage dispute is extinguished; Plaintiff has not alleged an independent contractual obligation that Defendant breached; and that the depreciation allegation is conclusory. (Doc. 26 at 8–10). In essence, Defendant argues that once it paid the ACV "there was no remaining breach-of-contract dispute." (*Id.* at 8). Relatedly, Defendant argues that the declaratory judgment claim (count II) is duplicative of count I and fails for similar reasons. (*Id.* at 11). For the following reasons, the Court dismisses counts I and II without prejudice.

First, Defendant argues that because it undisputedly paid the full ACV awarded (minus the applicable deductible), "the coverage dispute is extinguished[,] and the insurer has discharged its policy obligations." (Doc. 26 at 8 (citing *Federated Nat'l Ins. Co. v. Esposito*, 937 So. 2d 199, 200–01 (Fla. Dist. Ct. App. 2006), and *State Farm Fla. Ins. Co. v. Silber*, 72 So. 3d 286, 289 (Fla. Dist. Ct. App. 2011))). While this argument has initial appeal, the cases Defendant cites do not support this specific proposition. Instead, they concern circumstances in which a plaintiff moves for confirmation of an appraisal award. That is not the situation here.

Next, Defendant's argument regarding the lack of a standalone interest provision in the policy. Defendant points out that to "the extent Plaintiff relies on authority permitting a post-award cause of action, those cases involved a standalone contractual obligation to pay interest that this Policy does not

contain." (Doc. 26 at 8 (citing *Taylor v. State Farm Fla. Ins. Co.*, 388 So. 3d 307, 310–11 (Fla. Dist. Ct. App. 2024), and *Safont v. State Farm Fla. Ins. Co.*, No. 23-11645, 2025 WL 212286, at *3 (11th Cir. Jan. 16, 2025))). Again, true, but Plaintiff does not contend that the policy contains such a standalone interest provision, nor is count I a claim for breach of such a provision. (Doc. 31 at 7 ("Plaintiff agrees that the policy does not expressly provide for interest.")). So this narrow argument does not take Defendant across the finish line. But more on this argument shortly.

Finally, depreciation. On this point, Plaintiff alleges that

> Defendant withheld recoverable depreciation of $280,518.85 (the difference between the Award's Replacement Cost Value and Actual Cash Value), which Defendant's payment letter conditioned upon submission of repair documentation within 180 days. Defendant is in receipt of documentation evidencing repairs and, therefore, payment is owed.

(¶ 40). In Defendant's view, this allegation is conclusory because it fails to identify "what documentation was submitted, when it was submitted, whether it satisfied the Policy's requirements, or in what manner Defendant failed to act upon it." (Doc. 26 at 10). Here, the Court agrees. Until Plaintiff has plausibly alleged that its actions have triggered Defendant's obligation to pay the value of depreciation under the policy, the allegation that "payment is owed" is merely conclusory. Accordingly, count I is dismissed without prejudice.

The declaratory judgment claim incorporates by reference the same paragraphs (1–40) as count I but fails to identify any particular policy provision Defendant breached. As Defendant underscores, it "seeks the same determination of breach based on the same facts." (Doc. 26 at 11). To the extent Plaintiff relies on the same breach of paragraph 40 in count II as it does in count I, the Court has found that allegation is conclusory. And otherwise, count II "does not seek a prospective declaration regarding an uncertain policy obligation." (*Id.*). On these grounds, count II is also dismissed without prejudice.

Finally, the Court addresses the broader problem with counts I and II. By arguing that Plaintiff fails to allege an independent contractual provision Defendant breached, Defendant identifies a critical deficiency in the First Amended Complaint. The undersigned has found that "[w]hen a breach of contract claim fails to state which contractual provision was breached, the claim is appropriately dismissed." *Horsman v. Cooney*, No. 2:23-CV-1205-SPC-KCD, 2024 WL 4201613, at *5 (M.D. Fla. Sept. 16, 2024) (citing *Timber Pines Plaza, LLC v. Kinsale Ins. Co.*, No. 8:15-CV-1821-T-17TBM, 2016 WL 8943313, at *2 (M.D. Fla. Feb. 4, 2016)). "This is because failing to allege the specific provision of the contract that has been breached is akin to making 'the-defendant-unlawfully-harmed-me-accusation' that the United States Supreme Court warned against in *Iqbal*." *United Fire & Cas. Company v. Progressive*

*Express Ins. Co.*, No. 6:19-CV-1049-ORL-41-EJK, 2019 WL 13067269, at *2 (M.D. Fla. Nov. 20, 2019). Counts I and II fit this mold.

Plaintiff only cites the Loss Payment provision in the First Amended Complaint. (¶ 14). A failure to pay depreciation due and owing might breach this provision (the Court takes no position on this matter), but for the reasons explained above, the Court finds Plaintiff's allegation on this point is conclusory under *Iqbal* and *Twombly*. While Plaintiff repeatedly alleges that Defendant "breached the policy" in many ways, *see, e.g.*, ¶ 56, it fails to allege the specific contractual provision(s) breached.[2] As such, counts I and II require more specificity. *Cf. United Fire & Casualty*, 2019 WL 13067269, at *2 (dismissing breach of contract claim when "[t]he facts of the Complaint allege that Defendant breached the contracts in various ways but do not tie any breach to any specific provision in either of the contracts"); *Houston v. Centene Mgmt. Co., LLC*, No. 19-CIV-20620-RAR, 2019 WL 7971713, at *3 (S.D. Fla. Oct. 20, 2019) (although the plaintiffs provided sufficient allegations that, if taken as true, could state a claim for breach of contract, the "critical flaw" was that "they fail to identify any specific provisions of the contracts that were breached").

---

[2] As explained above, Plaintiff incorporates by reference paragraphs 1–40 in counts I and II. (¶¶ 41, 52).

*Counts III and IV*

Having dismissed Plaintiff's breach of contract and declaratory judgment claims without prejudice, the Court turns to counts III and IV, the bad faith claims. "'There are three prerequisites to filing a statutory bad-faith claim: (1) determination of the insurer's liability for coverage; (2) determination of the extent of the insured's damages; and (3) the required [CRN] must be filed under section 624.155(3)(a)[, Fla. Stat.]." *Ricol Holdings, LLC v. Westchester Surplus Lines Ins. Co.*, 684 F. Supp. 3d 1216, 1220 (N.D. Fla. 2023) (quoting *Landers v. State Farm Fla. Ins. Co.*, 234 So. 3d 856, 859 (Fla. Dist. Ct. App. 2018)).

The Court starts with count IV because the dispute is easily resolved. Here, Plaintiff alleges a violation of § 624.155(1)(b) for statutory bad faith. It is well-settled in Florida that a violation of this provision of the statute "is premature until there is a determination of liability and extent of damages owed on the first-party insurance contract." *Vest v. Travelers Ins. Co.*, 753 So. 2d 1270, 1276 (Fla. 2000). The Florida Supreme Court instructs that such "a claim should be dismissed as premature." *Id.* Here, no court has rendered a final judgment or decree against Defendant finding that it breached the insurance policy. Plaintiff concedes as much, arguing that the Court should abate count IV. (Doc. 31 at 18–19). Following the Florida Supreme Court's directive, the Court dismisses count IV without prejudice as premature. *See*

*In re Portofino Condo. Hurricane Sally Bad Faith Litig.*, No. 3:25CV52-TKW-HTC, 2025 WL 1927500, at *7 (N.D. Fla. July 14, 2025) (dismissing bad faith claims under § 624.1551 insofar as the claims are based on § 624.155(1)(b)).

In count III, Plaintiff alleges statutory bad faith under § 624.155(1)(a)(1) – violations of § § 626.9541(1)(i), Fla. Stat. Regarding this claim, Defendant argues that Plaintiff has not met the requisite conditions precedent to bringing its bad faith lawsuit because the CRN is defective as a matter of law. (Doc. 26 at 16). Alternatively, Defendant argues the Court should abate count III pending final resolution of counts I and II on the merits because "Florida law does not permit a bad faith claim to proceed until there has been a determination of the insurer's liability for coverage and the extent of the insured's damages." (*Id.* at 17). In fact, if the Court allowed bad faith discovery to proceed before the contract issues are resolved, Defendant argues it would be "premature and prejudicial." (*Id.*).

With respect to counts III and IV,[3] the Court finds a Northern District of Florida opinion particularly persuasive. Like the instant case, in *Ricol Holdings, LLC v. Westchester Surplus Lines Insurance Company*, the plaintiff brought claims for breach of contract and bad faith under § 624.155(1)(b)1, and bad faith/unfair claim settlement practices under §§ 624.155(1)(a) and

[3] Although the Court has already dismissed count IV, *Ricol*'s reasoning equally applies to it.

626.9541(1)(i). 684 F. Supp. 3d at 1220. There, the defendant paid the ACV "but according to [the plaintiff, the defendant] had not paid all the money due and owing under the appraisal award—namely the $31,250 difference between the ACV and RCV, which the complaint refers to as recoverable depreciation—even though [the plaintiff] had repaired the damaged property." *Id.* at 1218 (cleaned up). Because it was undisputed that a CRN was filed, the parties' dispute over the ripeness of the bad faith claims turned on whether the appraisal award was a determination of the defendant's liability and extent of the plaintiff's damages under the policy.[4] *Id.* at 1220.

The court concluded that the bad faith claims were not ripe, as the

> RCV in the appraisal award determined the potential extent of Plaintiff's damages, but it did not determine that Plaintiff is, in fact, entitled to that amount of damages. Likewise, although Defendant's payment of ACV was akin to a concession of liability and damages in that amount, *see, e.g., Bryant v. GeoVera Spec. Ins. Co.*, 271 So. 3d 1013, 1020–22 (Fla. 4th DCA 2019), there remains a dispute as to Plaintiff's entitlement to the difference between ACV and RCV under the policy. It would be premature to determine whether Defendant acted in bad faith by not paying the RCV (or the difference between ACV and RCV) until it is determined whether Plaintiff satisfied all of the requirements in the policy necessary to recover RCV.

*Id.* (emphasis in original). Similar to the facts in this case, the court explained that the defendant's payment of the ACV did not resolve the entire claim in

[4] Likewise, the parties here do not dispute that a CRN was filed, though they dispute whether it is legally deficient. The Court need not address the sufficiency of the CRN at this juncture, given that it finds the bad faith claims are premature and dismisses them without prejudice.

the plaintiff's view, and the extent of the defendant's liability for the difference between ACV and RCV had not been determined because there was a dispute in the breach of contract claim as to whether the plaintiff complied with the policy conditions governing payment of RCV. *Id.* at 1221.

The similarity of the allegations and posture of this case with *Ricol* persuades the undersigned to follow it. The *Ricol* court also dismissed the breach of contract claim without prejudice before analyzing the bad faith claims.[5] *Id.* at 1220 (finding the breach of contract claim must be re-pled to properly frame the issue in dispute). Here, the Court has similarly dismissed the breach of contract and declaratory judgment claims without prejudice. And like *Ricol*, Defendant's alleged failure to pay RCV seems to be the only plausible breach of contract issue in the case—assuming Plaintiff can properly plead it under *Iqbal* and *Twombly*. Accordingly, until the full extent of Defendant's liability and Plaintiff's damages are determined, the bad faith claims are premature and are dismissed without prejudice.[6]

---

[5] It appears the plaintiff did not bring a declaratory judgment claim in *Ricol*.

[6] The Court agrees with the reasoning in *Ricol* that "construing the bad faith claims to be limited to the untimely payment of the ACV and allowing the claims to proceed in that manner contemporaneously with the breach of contract claim based on the failure to pay the difference between ACV and RCV would prejudice Defendant (and not be in the interest of justice) because information in Defendant's claim file that would generally be protected from discovery in a coverage dispute could be subject to discovery in connection with the bad faith claims." *Ricol*, 684 F. Supp. 3d at 1221. Like in *Ricol*, it appears here as though Plaintiff's bad faith claims are at least partially premised on Defendant's failure to pay RCV, not just its failure to pay the ACV sooner than it did. *See id.* Plaintiff's incorporation of paragraphs 1–40 into counts III and IV (and counts I and II, for that matter) supports this conclusion.

***

In sum, Plaintiff has identified—but failed to properly plead—a potential breach of the Loss Payment provision because of Defendant's alleged failure to pay RCV. Otherwise, Plaintiff's first two claims merely attempt to shoehorn facts related to bad faith into its breach of contract and declaratory judgment claims—apparently in an unsuccessful attempt to bring its bad faith claims now. The *Ricol* plaintiff tried something similar. In response, the *Ricol* court noted that it "need not consider Defendant's argument that the allegations about improper claim adjustment in the breach of contract count . . . should be stricken because they are not relevant to that claim. *However, when the breach of contract claim is re-pled, it should only include the facts that are relevant to that claim or that provide background necessary to understand the claim.*" *Ricol*, 684 F. Supp. 3d at 1220 n.3 (emphasis added). The Court issues the same warning to Plaintiff now, should it attempt to replead counts I and II.

Accordingly, it is now

**ORDERED**:

1. Defendant Vantage Risk Specialty Insurance Company's Motion to Dismiss Plaintiff's First Amended Complaint (Doc. 26) is **GRANTED**.
2. The First Amended Complaint (Doc. 23) is **DISMISSED without prejudice**.
3. Plaintiff may file a Second Amended Complaint in accordance with

this Order by **November 20, 2026**. Failure to comply with this Order may result in dismissal of this action without further notice.

**DONE** and **ORDERED** in Fort Myers, Florida on November 5, 2026.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies to: All Parties of Record